DORSEY & WHITNEY LLP
Bruce R. Ewing
51 West 52nd Street
New York, New York 10019
(212) 415-9200

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| VIACOM INTERNATIONAL INC.,<br><br>                              Plaintiff,<br><br>              v.<br><br>THOMAS BULMAN, BULL AIRS NY LLC and<br>THOM BULMAN LLC,<br><br>                              Defendants. | Civil Action No.  5:24-CV-0665 (DNH/ML) |

## COMPLAINT

Plaintiff Viacom International Inc. ("Viacom"), by and through its attorneys, hereby

alleges against defendants Thomas Bulman, Bull Airs NY LLC, and Thom Bulman LLC

(collectively, "Defendants"), as follows:

## INTRODUCTION

1.     This is a case in which Defendants and their agents are engaged in rampant,

shameless theft of intellectual property belonging to Viacom for the purpose of enriching

themselves, while simultaneously confusing the public and damaging Viacom.  Defendants are

marketing consumer products like shoes, apparel and other goods featuring iconic Viacom

properties including TEENAGE MUTANT NINJA TURTLES, AVATAR: THE LAST

AIRBENDER, AAAHH!!! REAL MONSTERS and NICKELODEON, and their various

derivatives.  These goods bear Viacom's trademarks and copyrighted works that brazenly and deliberately infringe and dilute Viacom's trademarks, and that infringe its copyrights.

2.      After using Viacom's intellectual property in consumer products without permission and being asked by Viacom to cease and desist from any further use, Defendants approached Viacom to obtain licenses to use its valuable intellectual property, most notably the TEENAGE MUTANT NINJA TURTLES trademarks, along with the characters and other symbols of that property known around the world.  Viacom declined to grant Defendants such licenses.  Notwithstanding Viacom's response and their full awareness of Viacom's intellectual property rights, and that they could not use Viacom's trademarks or exploit Viacom's copyrighted works without authorization from Viacom, Defendants decided to persist in their wrongful conduct by continuing to market and sell infringing goods and releasing additional infringing goods sold in infringing packaging.  All of the wrongful use of Viacom's intellectual property described herein has been undertaken willfully and in bad faith so that Defendants can reap the rewards of Viacom's investment in such valuable intellectual property without permission.

3.      Viacom has made extensive and repeated efforts demanding Defendants stop their ongoing violations of Viacom's rights, to no avail.  To the contrary, Defendants have variously sought to hide from Viacom their continued infringing and diluting activities after having received repeated notices of Viacom's claims, or to present their product offerings as permissible under U.S. law, when Defendants have been repeatedly advised that they are not.

4.      Accordingly, Viacom has brought this action to vindicate Viacom's trademark rights and protect its copyrights against Defendants' ongoing, bad faith acts of trademark infringement, unfair competition and dilution in violation of U.S. and New York law, and to halt

their acts of copyright infringement under U.S. law.  The infringing and diluting products of Defendants described herein are those known to Viacom at this time, but it is possible, if not likely, that further violations of Viacom's intellectual property rights will come to light as this litigation progresses.  Thus, the wrongdoing of Defendants described herein should not be viewed as an exhaustive recitation of all of Defendants' ongoing violations of Viacom's copyrights and trademark rights.

**PARTIES, JURISDICTION AND VENUE**

5.     Plaintiff Viacom is a Delaware corporation having its principal place of business at 1515 Broadway, New York, New York and is the owner of the trademarks and copyrights asserted in this action.

6.     Upon information and belief, defendant Thomas Bulman is an individual who resides in Cortland, New York.

7.     Upon information and belief, defendant Thom Bulman LLC is a limited liability company organized and existing under the laws of the State of New York, with a principal place of business located at 3 Delaware Avenue, Cortland, New York.  Upon information and belief, defendant Thomas Bulman is the Manager of defendant Thom Bulman LLC.  Upon information and belief, Thom Bulman LLC has directly participated in the acts of trademark infringement, unfair competition, trademark dilution and copyright infringement described herein, with full knowledge that such activity violated Viacom's rights in such intellectual property.

8.     Upon information and belief, defendant Bull Airs NY LLC is a limited liability company organized under the laws of the State of Florida, with a principal place of business located at 3 Delaware Avenue, Cortland, New York.  Upon information and belief, defendant Thom Bulman LLC is the Manager of defendant Bull Airs NY LLC.  Upon information and belief, defendant Bull Airs NY LLC is administratively inactive under Florida law for failure to

file its annual report, but continues to do business notwithstanding, including through ongoing business activities conducted in the State of New York.

9.      Upon information and belief, defendant Thomas Bulman is, and has been at all relevant times, the Manager and/or controlling member of both of defendants Thom Bulman LLC and Bull Airs NY LLC, and in that capacity directly and personally oversaw and/or participated in the acts of trademark and copyright infringement, unfair competition and dilution described herein, with full knowledge that such activity violated Viacom's copyright and trademark rights, or specifically directed that others perpetrate the acts of infringement, dilution and unfair competition described herein, with full knowledge that such conduct is wrongful. Upon information and belief, Defendant Thomas Bulman has an obvious and direct financial interest in the wrongful conduct of the other Defendants herein.

10.     This is a civil action arising out of Defendants' infringement of trademarks, copyrights and related intellectual property owned, used and exploited by Viacom, unfair competition, and dilution, in violation of §§ 32(1) and 43(a) and (c) of the U.S. Trademark Act of 1946, *as amended* (the "Lanham Act"), 15 U.S.C. §§ 1114(1), 1125(a) and (c), as well as under New York statutory and common law, and for the infringement of Viacom's copyrights under the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.*

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

12.     Upon information and belief, this Court has personal jurisdiction over Defendants pursuant to CPLR 301 and 302 by virtue of their physical location within this State and this District, their commission of tortious conduct as described herein in the State of New York and

this District, and their transaction of business within the State of New York and this District. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

## STATEMENT OF PLEADED FACTS

### Viacom and Its Rights to the Iconic Entertainment Properties at Issue

13.     Viacom is among the world's preeminent creators, producers, and distributors of multimedia entertainment, including motion pictures, television series, web series, short form audiovisual works and other entertainment content.  Viacom owns rights to world-famous properties that include TEENAGE MUTANT NINJA TURTLES, AVATAR: THE LAST AIRBENDER, AAAHH!!! REAL MONSTERS, and their various related sequels, spinoffs and other derivative works.  Viacom creates media content based on these properties that is distributed through linear cable television networks, including its famous NICKELODEON cable television channel, streaming services, online and theatrical releases.  Viacom also manages a licensing program for all of these properties that includes consumer products and services for each property, including toys, clothing and accessories, food items, decorative items, wall stickers, personal care products, and experiences marketed towards fans of the properties. A discussion of these important Viacom properties appears below.

### TEENAGE MUTANT NINJA TURTLES

14.     TEENAGE MUTANT NINJA TURTLES ("TMNT") was originally written as a comic book series by Kevin Eastman and Peter Laird in 1984, and it follows four sewer-dwelling, bandana-wearing, anthropomorphic turtles who fight various forms of evil in New York City.  The story's heroes are Leonardo, Raphael, Donatello and Michelangelo, each of whom is immediately recognizable by the signature colors of their bandanas – blue, red, purple and orange, respectively.

15.   Since the release of the first TEENAGE MUTANT NINJA TURTLES comic book, a mass of TMNT-related multimedia has been released, including five individual comic book series, five individual television series, seven films, and over fifty video games.  The TMNT franchise has gained worldwide popularity through the release of these works.  Viacom, through its licensees, markets and sells a variety of products emanating from TMNT, including video games; key chains; backpacks; face masks; cell phone accessories and covers; apparel – including footwear, t-shirts and sweatshirts; household items such as water bottles, mugs, blankets, and pillows; costumes and party supplies; and other collectibles such as plush toys, comics, and toys (collectively, "TMNT Products").

16.   Among the TMNT Products is a line of "Superstar Shelltoe" sneakers produced by the world famous athletic apparel and footwear company Adidas AG bearing TMNT trademarks licensed from Viacom.  The name "Superstar Shelltoe" pays homage to TMNT on the franchise's 40th anniversary, and the shoe details include green uppers inspired by the overall appearance of the TMNT protagonists paired up with a turtle-shell pattern on the shoe toe.  Each pair incorporates unique details to help them stand out from others, including monogram lace charms representing each turtle, custom insoles, and hidden "Ninja Power!" text beneath the tongue.

17.   Sales of TMNT Products, both sold by Viacom and its licensees, have exceeded $8 billion globally since 2012, and in 2023 alone, Products bearing TMNT trademarks and copyrighted characters generated more than $1 billion in global sales with more than 1100 licenses for the franchise (i.e., Playmates, Hasbro, Mattel, Crayola, Funko, Crocs and General Mills), in more than 550 retailers (i.e., Walmart, Target, Amazon, Macy's, Kroger, Kohl's, Toys R Us), in more than 220 markets worldwide.  The TMNT franchise has been the subject of

extensive advertising and promotion from the time of launch through the present, in the form of print, television, radio, electronic and digital communications.  Viacom and its licensees have spent substantial sums on the advertising and promotion of TMNT Products in the U.S.  As a result of all this extensive use, advertising and promotion by Viacom and its licensees, the distinctive trademarks TEENAGE MUTANT NINJA TURTLES and TMNT have become famous among the general consuming public of the U.S.

18.     Viacom owns an extensive portfolio of registered and common law TMNT trademarks encompassing a wide variety of goods and services that Viacom regularly enforces against third-party infringers like Defendants.  Among the registered trademarks Viacom owns in the U. S. for the TMNT properties (the "TMNT Registered Trademarks") are the following:

| Trademark | Registration Date | Registration Number | Goods and Services |
|---|---|---|---|
| TEENAGE MUTANT NINJA TURTLES | November 17, 1987 | 1,465,387 | Printed matter, namely comic books, game books, and drawing manuals |
| TEENAGE MUTANT NINJA TURTLES | December 15, 1987 | 1,469,195 | Toy figures, sets of miniature figures for game playing |
| TEENAGE MUTANT NINJA TURTLES | May 18, 2004 | 2,843,654 | Clothing, footwear and headgear; namely, cloth aprons, bandanas, bathing suits, clothing belts, children's sleepwear; boxer shorts, clothing caps; Halloween costumes; children's footwear; gloves; hats; ski hats; headbands; outwear jackets; jumpsuits; mittens; neckwarmers; children's pram suits; children's raincoats; robes; socks; stockings; suspenders; sweaters; sweatshirts; T-shirts; tops; underwear and visors |

| | | | |
|---|---|---|---|
| TEENAGE MUTANT NINJA TURTLES | March 23, 2004 | 2,826,075 | Printed matter and artist's materials; namely, bookmarks; children's books; audio cassette books; namely, a series of children's fiction books and cassette tapes packaged together; coloring books; a series of fictional children's books; corrugated record storage boxes; calendar cards; wall and desk calendars; trading cards; greeting cards; cards for Valentine's Day and Christmas; modeling clay sets, composed of clay, sculpting tools and instructions; play craft sets consisting of synthetic dough, molds, modeling knife, playmat and instructions; coloring sets with crayons, paper and numbered instructions; painting sets for children; paper doorknobs hangers; paper lunch bags; magazines relating to children's hobbies and play activities, fan magazines, comic books; memo boards; memo pads; novels; paper party hats; paper patterns for costumes; pencils; decorative pencil top ornaments; pencil drawing sets for children; posters; framed and unframed photographs; cardboard cut-out character stands for decoration; writing paper and envelope stationery; stencils; sticker decal sets; sticker albums; stickers; facial tissues; gift tags, theme notebooks, erasers, portfolios |
|  | April 11, 1989 | 1,534,724 | Entertainment services, namely, a continuing television series of animated adventure shows |

| | July 4, 2006 | 3,112,464 | Video game software; video game programs; computer game programs; electronic game programs |
|---|---|---|---|
| TMNT | June 26, 2006 | 3,370,778 | Clothing, footwear and headgear, namely, cloth aprons, bandanas, bathing suits, clothing belts, children's sleepwear, boxer shorts, pants, clothing caps, costumes for use in role-playing games, halloween costumes, children's footwear, gloves, hats, ski hats, headbands, outwear jackets, jumpsuits, mittens, neck warmers, children's pram suits, children's raincoats, robes, socks, stockings, suspenders, sweaters, sweatshirts, t-shirts, tops, underwear and visors |
| TMNT | July 4, 2006 | 3,112,465 | Video game software; video game programs; computer game programs |

All of the foregoing registrations for the TMNT Registered Trademarks are valid and subsisting, and they are all incontestable under 15 U.S.C. § 1064.

19.     Not only does Viacom own registered trademark rights in both TEENAGE MUTANT NINJA TURTLES and the acronym TMNT, it also owns extensive common law rights in both those terms and a variety of words, images, characters, character names, symbols, catchphrases and other indicia of the TMNT franchise.  Among these protectable indicia of the TMNT franchise in which Viacom has acquired exclusive trademark rights through substantial use and recognition over time are:

- The word TURTLES, images of green anthropomorphic warrior turtles with weapons, and hexagonal turtle-shell images that connote the protagonists of the TMNT franchise.

- The images and names of the four stars of the TMNT franchise: Leonardo, Raphael, Donatello and Michelangelo.

- The combination of the signature colors blue, red, purple and orange to identify the same four protagonists.

- Both the name and image of KRANG, arguably the leading supervillain of the TMNT franchise.

- The term PARTY WAGON, used in many incarnations of the TMNT franchise to identify the protagonists' primary mode of transportation, a depiction of which also appears below:



- The term FOOT STINKS, which symbolizes the protagonists' disdain for the Foot Clan, a group of Japanese ninjas who are often antagonists of Leonardo, Raphael, Donatello and Michelangelo.  The phrase is often accompanied by a distinctive image of a right footprint that is the symbol of the Foot Clan, as shown below.



- Other iconography of the TMNT property, including the color green (when used with other protected indicia of the TMNT franchise) to symbolize the four protagonists; slices of the pizza that are the favorite food of the titular heroes; the catchphrase "Cowabunga" that the TMNT franchise has used as the heroes' battle cry since approximately 1987; and references to or depictions of "Ooze," the substance that turned four ordinary turtles into the warriors that star in the TMNT property.

20.     All of the foregoing words, color combinations, images and character names (the "TMNT Common Law Trademarks") belong exclusively to Viacom; are distinctive, whether inherently or through use over time; have acquired extensive recognition among the consuming public; are uniquely associated with Viacom and the TMNT franchise in the minds of such consumers; and are famous among the general consuming public of the U.S.  All  these indicia of the TMNT franchise possess substantial goodwill that belongs exclusively and is of substantial value to Viacom.

21.     Separate and apart from the trademark rights Viacom owns in the TMNT franchise, Viacom has also registered a multitude of works related to the TMNT franchise, and the characters embodied therein, with the U.S. Copyright Office (the "TMNT Copyrighted Works").  The registrations include but are not limited to: "Teenage Mutant Ninja Turtles - 2012 Styleguide" (U.S. Copyright Registration No. VAu001118386), issued by the Register of Copyrights on November 20, 2012; "Teenage Mutant Ninja Turtles - Property Universe Mythology Styleguide" (U.S. Copyright Registration No. VAu001211984), issued by the Register of Copyrights on May 13, 2023; "Teenage Mutant Ninja Turtles: Turtle Power!

11

Styleguide" (U.S. Copyright Registration No. VAu001188358), issued by the Register of

Copyrights on October 21, 2014; "TMNT Total Turtle Takeover: 2015 Styleguide" (U.S.

Copyright Registration No. VAu001230628), issued by the Register of Copyrights on October

22, 2015; "Teenage Mutant Ninja Turtles – Eps. 101 (U.S. Copyright Registration No. PA 1-

824-457), issued by the Register of Copyrights on October 26, 2012; "Teenage Mutant Ninja

Turtles – Eps. 201" (U.S. Copyright Registration No. PA 1-886-722), issued by the Register of

Copyrights on November 7, 2013; "Teenage Mutant Ninja Turtles – Eps. 301" (U.S. Copyright

Registration No. PA 1-932-533), issued by the Register of Copyrights on October 31, 2013;

"Teenage Mutant Ninja Turtles – Eps. 401 (U.S. Copyright Registration No. Reg. No: PA 1-971-

691), issued by the Register of Copyrights on November 25, 2015; "Teenage Mutant Ninja

Turtles – Eps. 501" (U.S. Copyright Registration No. PAu3-836-340), issued by the Register of

Copyrights on January 24, 2017; and "Teenage Mutant Ninja Turtles: The Beginning – The

Complete 1st Season" (U.S. Copyright Registration No. PA 1-931-807), issued by the Register

of Copyrights on October 14, 2014 (collectively, the "TMNT Registered Copyrights").

     22.     Among the exclusive rights granted to Viacom under the U.S. Copyright Act in

the TMNT Copyrighted Works are the exclusive rights to reproduce, prepare derivative works

of, distribute copies of, and display these TMNT Copyrighted Works to the public.

     23.     Since first publication, these TMNT Copyrighted Works have been used on

TMNT Products and are featured on Viacom's and/or its licensees' official websites.

24.     Some of the characters and character names embodied in the TMNT Copyrighted Works include, but are not limited to, the following:[1]



| Leonardo | |
| Raphael | |
| Donatello | |

---

[1] The table contains a non-exhaustive list of the characters embodied in the TMNT Copyrighted Works. This table is included only to provide examples of the characters found on the infringing products offered for sale or sold by Defendants.  Regardless of any changes in their design, each of these characters, among others contained within the TMNT Copyrighted Works, have always maintained their distinctive qualities and unique elements of expression.



| | |
|---|---|
| **Michelangelo** | |
| **Krang** | |

## AVATAR: THE LAST AIRBENDER

25.     AVATAR: THE LAST AIRBENDER ("ATLA") is an animated fantasy-action property that is owned and distributed by Viacom.  ATLA is set in a largely Asiatic-inspired world in which some people can telekinetically manipulate one of the four elements – water, earth, fire or air – through practices known as "bending," inspired by Chinese martial arts.  The only individual who can bend all four elements, the "Avatar," is responsible for maintaining harmony among the world's four nations and serves as the link between the physical world and the spirit world.  ATLA began as an animated television series that ran for three seasons on Viacom's NICKELODEON cable channel between 2005 and 2008.  The original series is currently available on Paramount+, Amazon Prime and Netflix, where it has become one of Netflix's most viewed offerings.  Since its original release, ATLA has developed into a franchise that consists of three television series, several shorts,  a 2010 live-action feature film, multiple books, novelizations, comic books, videogames, apparel, housewares and other collectibles.  A

new live action adaption of the original series was released in February 2024 on Netflix, with an additional two seasons in development.  In addition, another  animated feature film is set to be released theatrically in 2026, and two additional theatrical animated films are currently in development.  The ATLA franchise has gained worldwide popularity through the release of these works.  Since the release of the first ATLA series, Viacom has also engaged in an extensive licensing program through which licensees have been granted the right to use the ATLA trademark or variations thereof on toys, paper products, clothing, accessories, wallets and related goods and services (the "ATLA Products").

26.     Sales of ATLA Products, both sold by Viacom and its licensees, in the U.S. are an important component of Viacom's licensing program's revenue.  Viacom has spent substantial sums on the advertising and promotion of  ATLA Products in the U.S.  Indeed, the success of the franchise has led to new licensing opportunities:  The Avatar: The Last Airbender in Concert World Tour has recently been announced as a global live orchestra experience celebrating the highly acclaimed franchise.  Visiting 14 countries across three continents, the musical tour is expected to launch in April 2024 through 2025.  As a result of all of this extensive use, advertising and promotion by Viacom, the ATLA trademark and variations thereof are strong, distinctive trademarks that are well-known among the general consuming public of the U.S.

27.     Viacom owns multiple registered and common law ATLA trademarks encompassing various goods and services that Viacom regularly enforces against third-party infringers.  Among the registered trademarks Viacom owns in the United States for the ATLA properties (the "ATLA Registered Trademarks") are the following:

| Trademark | Registration Date | Registration Number | Goods and Services |
|---|---|---|---|
| AVATAR: THE LAST AIRBENDER | November 1, 2022 | 6,887,590 | Toys and playthings, namely, dolls and accessories therefor, action figures, action figure play sets, character action figures, character action figure play sets, modeled plastic toy figurines. |
| AVATAR: THE LAST AIRBENDER | November 15, 2022 | 6,894,474 | Stickers |
| NICKELODEON AVATAR: THE LAST AIRBENDER | September 27, 2005 | 3,002,720 | Entertainment services in the nature of an ongoing television series featuring animation; providing information in the field of entertainment featuring animation rendered via computer by means of a global computer network |

28.     Not only does Viacom own registered trademark rights in the ATLA Registered Trademarks, it also owns common law rights in those terms and a variety of words, images, symbols, catchphrases and other indicia of the ATLA franchise.  Among these protectable indicia of the ATLA franchise in which Viacom has acquired exclusive trademark rights through substantial use and recognition over time are:

- Both the name and image of MOMO, a faithful lemur who is the sidekick of the titular Avatar.

- The symbols depicted below for the four elements that are the focus of the ATLA series – water, earth, fire and air.



The foregoing images and character name (the "ATLA Common Law Trademarks") belong exclusively to Viacom; are distinctive, whether inherently or through use over time; have acquired extensive recognition among the consuming public; and are uniquely associated with Viacom and the ATLA franchise in the minds of such consumers. All of these indicia of the ATLA franchise possess substantial goodwill that belongs exclusively and is of substantial value to Viacom.

29.     Separate and apart from the trademark rights Viacom owns in the ATLA franchise, Viacom has also registered many works related to the ATLA franchise, and the characters embodied therein, with the U.S. Copyright Office (the "ATLA Copyrighted Works"). The registrations include, but are not limited to: "Avatar: The Last Airbender – The Complete Series" (U.S. Copyright Registration No. PA 1-995-806), issued by the Register of Copyrights on October 23, 2015; "Avatar: The Last Airbender – The Complete Book 1 Collection" (U.S. Copyright Registration No. PA 1-366-298), issued by the Register of Copyrights on January 16, 2007; "Avatar: The Last Airbender – The Complete Book 2 Collection" (U.S. Copyright Registration No. PA 1-592-720), issued by the Register of Copyrights on September 17, 2007;

and "Avatar: The Last Airbender – The Complete Book 3 Collection" (U.S. Copyright

Registration No. PA 1-621-167), issued by the Register of Copyrights on December 12, 2008

(collectively, the "ATLA Registered Copyrights").

  30. Among the exclusive rights granted to Viacom under the U.S. Copyright Act in

the ATLA Copyrighted Works are the exclusive rights to reproduce, prepare derivative works of,

distribute copies of, and display these ATLA Copyrighted Works to the public.

  31. Since first publication, these ATLA Copyrighted Works have been used on ATLA

Products and are featured on Viacom's and/or its licensees' official websites.

  32. Some of the characters and character names embodied in the ATLA Copyrighted

Works include, but are not limited to:

| | |
|---|---|
| **Momo** |   |



**The NICKELODEON Cable Television Channel**

33.     Viacom's NICKELODEON cable television channel was launched in 1979 as the first cable channel for children, airing programs primarily aimed at adolescents ages 2-17 and their families.  NICKELODEON programming, including such well-known programs as SPONGEBOB SQUAREPANTS, DORA THE EXPLORER, RUGRATS,  PAW PATROL and many others, has aired continuously since that time and is currently accessible to tens of millions American homes.  NICKELODEON is regularly ranked as one of the top suppliers of children's and teen-oriented content in the U.S. and worldwide.

34.     Viacom licenses its NICKELODEON trademark for use on a variety of goods and services including toys, paper products, clothing and accessories, knapsacks, food products and related goods, events, experiences, awards shows, theme parks and related services (the "NICKELODEON Products & Services").  Sales of NICKELODEON Products & Services, both by Viacom and its licensees, in the U.S. are substantial, and Viacom has also spent substantial sums on the advertising and promotion of NICKELODEON programming and NICKELODEON Products & Services in the U.S.  As a result of all of this extensive use, advertising and

promotion by Viacom, the NICKELODEON trademark and variations thereof are strong,

distinctive trademarks that are famous among the general consuming public of the U.S.

35.    Viacom owns multiple registered and common law NICKELODEON trademarks

encompassing various goods and services that Viacom regularly enforces against third-party

infringers.  Among the registered trademarks Viacom owns in the United States for the

NICKELODEON properties (the "NICKELODEON Registered Trademarks") are the following:

| Trademark | Registration Date | Registration Number | Goods and Services |
|---|---|---|---|
| NICKELODEON | November 23, 1982 | 1,217,864 | Television entertainment services |
| NICKELODEON | February 9, 1999 | 2,222,947 | Television broadcasting services via cable, satellite and other means |
| NICKELODEON | August 27, 1985 | 1,356,737 | Children's clothing, namely multiple sets-namely, skirts and tops sold as a unit and pants and tops sold as a unit; and tops, pants and skirts |

All of the foregoing registrations for the NICKELODEON Registered Trademarks are valid and

subsisting, and they are all incontestable under 15 U.S.C. §1064.

36.    Not only does Viacom own registered trademark rights in its NICKELODEON

trademark, it also owns extensive common law rights in that mark for a wide variety of goods

and services other than those for which that trademark is registered (the "NICKELODEON

Common Law Trademarks").  Both the NICKELODEON Registered Trademarks and the

NICKELODEON Common Law Trademarks belong exclusively to Viacom; are distinctive,

whether inherently or through use over time; have acquired extensive recognition among the

consuming public; are uniquely associated with Viacom in the minds of such consumers; and are

famous among the general consuming public of the U.S.  All these trademarks possess

substantial goodwill that belongs exclusively and is of substantial value to Viacom.

## AAAHH!!! REAL MONSTERS

37.     AAAHH!!! REAL MONSTERS ("ARM") is an animated television series that is

owned and distributed by Viacom.  ARM is set in New York City where three monsters – Ickis,

Oblina and Krumm – attend a monster school called The Gromble.  ARM began as a television

series that ran for four seasons on Viacom's NICKELODEON cable channel between 1994 and

1997.  The original series is now distributed through the Paramount+ streaming service, and it

also spawned a series of related properties, including video games.  The ARM franchise has

acquired substantial popularity through the release of these works.  Since the release of the ARM

series, Viacom has also engaged in an extensive licensing program through which licensees have

been granted the right to use the ARM trademark or variations thereof on toys, clothing,

accessories and related goods (the "ARM Products").

38.     Sales of ARM Products, both sold by Viacom and its licensees, are an important

component of Viacom's licensing program's revenue.  Viacom has spent substantial sums on the

advertising and promotion of ARM Products.  As a result of all of this extensive use, advertising

and promotion by Viacom, the ARM trademark and variations thereof are strong, distinctive

trademarks that are well-known among the general consuming public of the United States.

39.     Viacom owns U.S. Trademark Reg. No. 1,958,644 issued on February 27, 1996

for the trademark AAAHH!!! REAL MONSTERS covering "Entertainment services in the

nature of an animated television series" (the "ARM Registered Trademark"). The foregoing

registration is owned exclusively by Viacom and is valid, subsisting and incontestable under 15

U.S.C. § 1064.

40.     Not only does Viacom own registered trademark rights in the A!!!RM Registered Trademark, it also owns common law rights in that mark and in the names and images of the three main characters featured in the ARM property – Ickis, Oblina and Krumm.  The foregoing character images and names (the "ARM Common Law Trademarks") belong exclusively to Viacom; are distinctive, whether inherently or through use over time; have acquired extensive recognition among the consuming public; and are uniquely associated with Viacom and the A!!!RM franchise in the minds of such consumers.  All of these indicia of the ARM franchise possess substantial goodwill that belongs exclusively and is of substantial value to Viacom.

41.     Separate and apart from the trademark rights Viacom owns in the ARM franchise, Viacom also owns one U.S. copyright registration related to the ARM franchise and the characters embodied therein (the "ARM Copyrighted Works") issued by the U.S. Copyright Office, "Aaahhh!!! Real Monsters Eps. 28," PAu 3-451-767, issued on March 12, 2010 (the "ARM Registered Copyright").

42.     Among the exclusive rights granted to Viacom under the U.S. Copyright Act in the ARM Copyrighted Works are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the ARM  Copyrighted Works to the public.

43.     Since first publication, material embodied in the ARM Copyrighted Works, or derivatives thereof, has been used on ARM Products and is featured on Viacom's and/or its licensees' official websites.

44.     Some of the characters and character names embodied in the ARM Copyrighted Works include, but are not limited to, the following: [2]



| Ickis | |
| --- | --- |
| Oblina | |

[2] The table contains a non-exhaustive list of the characters embodied in the ARM Copyrighted Work. This table is included only to provide examples of the characters found on the infringing products offered for sale or sold by Defendants. Regardless of any changes in their design, each of these characters, among others contained within the ARM Copyrighted Work, have always maintained their distinctive qualities and unique elements of expression.

| | |
|---|---|
| **Krumm** |  |

**Defendants' Infringing Activities**

45.     Upon information and belief, Defendants are in the business of making and/or selling apparel, accessories, toys and other goods that have some sort of tie-in to popular culture. Defendants' goods are sold and marketed through their website accessible at the URL <bullairs.com>; social media channels like Instagram and Facebook; comic conventions and other similar events; and via their showroom located in Cortland, New York.

46.     Among the footwear and apparel products advertised, marketed, offered for sale and sold by Defendants are goods that shamelessly violate Viacom's rights in its TMNT, ATLA and ARM properties, and the NICKELODEON brand, as described above.  Indeed, even though Defendants, in common with the rest of the trade and the consuming public, are well aware of Viacom's copyrights and its registered and common law trademark rights in these properties and brand, Defendants have knowingly manufactured, distributed, offered for sale and/or sold in the U.S. products make prominent use of Viacom's intellectual property, and/or directly and actively participated in such activities, without authorization and in a manner designed to confuse consumers.  Illustrations of the manner in which Defendants have violated Viacom's rights appear below.

### A.   Defendants' Violations of Viacom's Rights in Its TMNT Property

47.   With respect to Viacom's TMNT Registered Trademarks, Defendants have repeatedly used the words TEENAGE MUTANT NINJA TURTLES, TURTLES or TMNT without authorization from Viacom in connection with the advertising, marketing, promotion and sale of infringing products that are presented to the consuming public as TEENAGE MUTANT NINJA TURTLES goods, including in hashtags, otherwise on social media, and on goods themselves, as shown below.







The image immediately above, obtained from a January 25, 2023 Facebook post on an account owned or controlled by Defendant Thomas Bulman, shows a jacket where the word "Turtles" appears prominently, but Defendants have blurred that word in an attempt to camouflage their wrongdoing. Such concealment confirms that Defendants know their activities are illegal, but they have continued to violate Viacom's trademark rights notwithstanding.

48.   Indeed, in Facebook messages sent to a small user group following receipt of written objections from Viacom, in which it demanded Defendants cease and desist their infringing activities without litigation, Defendant Thomas Bulman repeatedly acknowledged the illegality of his activities. But he advised the recipients of the communication shown below that Defendants' infringing merchandise would continue to be available for purchase, after Defendant Bulman edited the images of such goods on Defendants' website to make it appear as if they were no longer infringing. An example of one such communication appears below:



27

49.     With respect to Viacom's TMNT Common Law Trademarks and the TMNT Registered Copyrights, Defendants have repeatedly misappropriated valuable indicia of the TMNT franchise that are trademarks belonging to Viacom that the consuming public exclusively associates with Viacom and the TMNT franchise, most notably by advertising, marketing, promoting and selling "Party Wagon" and "Sewer Stomper" shoes that incorporate removable Velcro patches depicting each of the four heroes of the TMNT franchise and their signature bandana colors; turtle-shell patterns; and the color green in combination with all of the foregoing.  Some of these protected design elements also appear in the Adidas TMNT footwear that Viacom has actually licensed.  The unauthorized use of these TMNT Common Law Trademarks also infringes Viacom's rights in its TMNT Registered Copyrights.  Images of Defendants' infringing footwear appear below.

**"Party Wagon" Shoes**



**"Sewer Stomper" Shoes**



50. The boxes in which Defendants' infringing footwear is sold compound their serial violations of Viacom's trademark rights and their infringement of Viacom's copyrights. The "Party Wagon" shoes have been sold in boxes that directly copy and are substantially similar to the "Party Wagon" that is an integral part of the TMNT franchise and a symbol that designates that franchise exclusively, as shown below.



51.    The "Sewer Stompers" box is no less flagrantly violative of both Viacom's rights in its TMNT Common Law Trademarks and Registered Copyrights, as that box incorporates the character Raphael, recognizable by his signature bandana color, as well as other protectable indicia of the TMNT franchise that belong exclusively to Viacom.



52.    Defendants have also misappropriated other indicia of the TMNT franchise in a manner that infringes Viacom's valuable Common Law Trademarks, Registered Trademarks and Registered Copyrights through the advertising, promotion, marketing and sale of the following products:

**"Cowabunga Slides"**



**KRANG Hats**



**"Foot Stinks" Icons**



**Turtle Images**

Bull Airs Official Grand Opening!



**Velcro Pizza Shoe Patches**

Pizza Swooshes are back in stock and we dropped them down to $25 for a limited time.

https://www.bullairs.com/p rodu.../bull-horns-patch-pizza- set



**"Ooze Crew" Logos**



**Other TMNT Shoes Advertised as an "Official TMNT Collaboration"**

# A RADICAL COLLABORATION!

The bodacious dudes at Bull Airs have teamed up with the one and only Steve Lavigne of Shellback Artworks to create an official TMNT collaboration that jumps right off the 8-bit screen and onto your feet!

LIMITED RELEASE!



The TMNT shoes shown in the image directly above, apart from being violative of Viacom's valuable Common Law Trademarks, Registered Trademarks and Registered Copyrights, are also falsely described as an "Official TMNT Collaboration" when they are not.

53.     Defendants' bad-faith wrongdoing is accentuated by the fact that they approached Viacom for a license to use the TMNT Registered and Common Law Trademarks, as well as other indicia of the TMNT franchise protected as trademarks or by copyrights, but were not granted a license.  Notwithstanding this, Defendants thereafter perpetuated and expanded their ongoing infringing activities, taking the position that their products are "parodies" permissible under U.S. law.  But Defendants are wrong – as Viacom has pointed out repeatedly in pre-litigation correspondence.  Defendants' infringing TMNT products do not comment on or satirize the TMNT franchise in any way, but simply misappropriate the substantial goodwill in that franchise to sell products without authorization from Viacom.  Indeed, some of those goods

are directly competitive with the Adidas "Superstar Shelltoe" sneakers that Viacom has actually licensed.

54.     Defendants' sales of footwear, apparel and other products prominently featuring the TMNT Registered and Common Law Trademarks, and other protected indicia of the TMNT franchise, or variations thereof, is intended to, and is likely to, cause confusion, mistake or deception of the trade and public, initially, at the point of sale, and post-sale, and to cause them to believe that Defendants' products are the same as Viacom's or its authorized licensees' products, or are authorized, sponsored or approved by Viacom, or are otherwise affiliated or connected with Viacom and/or Viacom's TMNT franchise, and to dilute the distinctive quality of the TMNT Registered and Common Law Trademarks.

55.     Defendants' sales of footwear, apparel and other products prominently featuring characters and other subject matter that are TMNT Copyrighted Works protected by registered copyrights, or substantially similar variations thereof, infringe Viacom's rights in the TMNT Copyrighted Works that belong exclusively to Viacom.  Upon information and belief, the foregoing acts of infringement have been willful and intentional, with wanton disregard and indifference to the rights of Viacom.

56.     Defendants' wrongful, infringing acts have caused and will continue to cause irreparable harm to Viacom and to the substantial goodwill embodied in the TMNT Registered and Common Law Trademarks, and the TMNT Registered Copyrights, and said acts will continue unless restrained by this Court.

57.     Viacom has no adequate remedy at law.

**B.** **Defendants' Violations of Viacom's Rights in Its ATLA Property**

58.    With respect to Viacom's ATLA Registered Trademarks, Defendants have used the word "Avatar" without authorization from Viacom in connection with the advertising, marketing, promotion and sale of infringing products that are presented to the consuming public as "Wind Walker" goods, and on goods themselves, as shown below.



59.    With respect to Viacom's ATLA Common Law Trademarks and the ATLA Registered Copyrights, Defendants have repeatedly misappropriated valuable indicia of the ATLA franchise that are trademarks belonging to Viacom that the consuming public exclusively associates with Viacom and the TMNT franchise, most notably by advertising, marketing, promoting and selling "Wind Walker" shoes that incorporate removable Velcro patches depicting the character Momo, as shown in the image incorporated into paragraph 58 above; and by advertising and promoting their infringing merchandise using the identical symbols depicting the four elements that are the focus of the ATLA series – water, earth, fire and air – that are both ATLA Common Law Trademarks and Copyrighted Works belonging exclusively to Viacom, as shown below.

@everyone Another micro drop happens tonight for all you fans of the last Airbender at 4p.m. Eastern standard time, the design will be revealed, and they will be going live at 5 o'clock very limited number of these being made



60.     Defendants' sales of footwear and other products prominently featuring the ATLA Registered and Common Law Trademarks, and other protected indicia of the ATLA franchise, or variations thereof, is intended to, and is likely to, cause confusion, mistake or deception of the trade and public, initially, at the point of sale, and post-sale, and to cause them to believe that Defendants' products are the same as Viacom's or its authorized licensees' products, or are authorized, sponsored or approved by Viacom, or are otherwise affiliated or connected with Viacom and/or Viacom's ATLA franchise, and to dilute the distinctive quality of the ATLA Registered and Common Law Trademarks.

61.     Defendants' sales of footwear and other products prominently featuring characters and other subject matter that are ATLA Copyrighted Works protected by registered copyrights,

or substantially similar variations thereof, infringe Viacom's rights in the ATLA Copyrighted Works that belong exclusively to Viacom.  Upon information and belief, the foregoing acts of infringement have been willful and intentional, with wanton disregard and indifference to the rights of Viacom.

62.    Defendants' wrongful, infringing acts have caused and will continue to cause irreparable harm to Viacom and to the substantial goodwill embodied in the ATLA Registered and Common Law Trademarks, and the ATLA Registered Copyrights, and said acts will continue unless restrained by this Court.

63.    Viacom has no adequate remedy at law.

**C.    Defendants' Violations of Viacom's Rights in Its ARM Property and NICKELODEON Trademarks**

64.    With respect to Viacom's ARM and NICKELODEON Registered Trademarks, Defendants have used those Trademarks without authorization from Viacom in connection with the advertising, marketing, promotion and sale of infringing products that are presented to the consuming public as "AAAHH!!! REAL MONSTERS" goods from NICKELODEON, and on goods themselves, as shown below.



65.    With respect to Viacom's ARM Common Law Trademark and the A!RM

Registered Copyright, Defendants have misappropriated valuable indicia of the ARM franchise

that are trademarks belonging to Viacom that the consuming public exclusively associates with

Viacom and the ARM franchise, most notably by advertising, marketing, promoting and selling

shoes that incorporate images of the key characters who are the focus of that franchise, Ickis,

Oblina and Krumm, as shown in the image below.



Images of these characters are both ARM Common Law Trademarks and A!!!RM Copyrighted Works belonging exclusively to Viacom.

66.     In yet another Facebook message dated February 16, 2023, Defendant Thomas Bulman acknowledged that Defendants' sale of these infringing AAAHH!!! REAL MONSTERS and NICKELODEON products was illegal, and that recipients of his post needed to keep the existence of these products from Viacom, as shown below:





67.     Defendants' sales of footwear prominently featuring the ARM Registered and

Common Law Trademarks, and other protected indicia of the ARM franchise, as well as the

NICKELODEON Registered and Common Law Trademarks, or variations thereof, is intended

to, and is likely to, cause confusion, mistake or deception of the trade and public, initially, at the point of sale, and post-sale, and to cause them to believe that Defendants' products are the same as Viacom's or its authorized licensees' products, or are authorized, sponsored or approved by Viacom, or are otherwise affiliated or connected with Viacom and/or Viacom's ARM franchise, and to dilute the distinctive quality of the ARM Registered and Common Law Trademarks, and the NICKELODEON Registered and Common Law Trademarks.

68.    Defendants' sales of footwear and other products prominently featuring characters that are ARM Copyrighted Works protected by a registered copyright, or substantially similar variations thereof, infringe Viacom's rights in the ARM Copyrighted Works that belong exclusively to Viacom.  Upon information and belief, the foregoing acts of infringement have been willful and intentional, with wanton disregard and indifference to the rights of Viacom.

69.    Defendants' wrongful, infringing acts have caused and will continue to cause irreparable harm to Viacom and to the substantial goodwill embodied in the ARM Registered and Common Law Trademarks, and the ARM Registered Copyright, as well as the NICKELODEON Registered and Common Law Trademarks, and said acts will continue unless restrained by this Court.

70.    Viacom has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF**

**Trademark Infringement Under Section 32(1) of the Lanham Act**

71.    Viacom repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

72.    By selling, advertising, marketing and promoting products bearing the TMNT Registered Trademarks, ATLA Registered Trademarks, ARM Registered Trademark, and NICKELODEON Registered Trademarks, or confusingly similar variations thereof; or by

knowingly and materially contributing to such wrongful use of Viacom's TMNT Registered

Trademarks, ATLA Registered Trademarks, ARM Registered Trademark, and NICKELODEON

Registered Trademarks; or by having both the right and ability to control such wrongful activity

and a direct financial interest in such activity, Defendants are engaged in willful acts of

trademark infringement in violation of 15 U.S.C. § 1114(1) that have caused and are likely to

cause damage to Viacom and its TMNT Registered Trademarks, ATLA Registered Trademarks,

ARM Registered Trademark, and NICKELODEON Registered Trademarks.

73.     Defendants' actions have caused, and will continue to cause, irreparable harm to

Viacom unless permanently enjoined.

## SECOND CLAIM FOR RELIEF

### Unfair Competition and Use of False Designations
### of Origin Under Section 43(a)(1)(A) of the Lanham Act

74.     Viacom repeats and realleges each and every allegation set forth in the foregoing

paragraphs as if fully set forth herein.

75.     By selling, advertising, marketing and promoting products bearing the TMNT

Registered and Common Law Trademarks, ATLA Registered and Common Law Trademarks,

ARM Registered and Common Law Trademarks, and NICKELODEON Registered and

Common Law Trademarks, or confusingly similar variations thereof; or by knowingly and

materially contributing to such wrongful use of Viacom's TMNT Registered and Common Law

Trademarks, ATLA Registered and Common Law Trademarks, ARM Registered and Common

Law Trademarks, and NICKELODEON Registered and Common Law Trademarks; or by having

both the right and ability to control such wrongful activity and a direct financial interest in such

activity, Defendants are engaged in willful acts of unfair competition in violation of 15 U.S.C.

§ 1125(a)(1)(A) that have caused and are likely to cause damage to Viacom and its TMNT

Registered and Common Law Trademarks, ATLA Registered and Common Law Trademarks, ARM Registered and Common Law Trademarks, and NICKELODEON Registered and Common Law Trademarks.

76.     Defendants' actions have caused, and will continue to cause, irreparable harm to Viacom unless permanently enjoined.

## THIRD CLAIM FOR RELIEF

### Trademark Dilution Under Section 43(c) of the Lanham Act

77.     Viacom repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

78.     The TMNT Registered and Common Law Trademarks, and the NICKELODEON Registered and Common Law Trademarks, are famous among the general consuming public of the United States.

79.     By selling, advertising, marketing and promoting products bearing the TMNT Registered and Common Law Trademarks, and the NICKELODEON Registered and Common Law Trademarks, or by knowingly and materially contributing to such wrongful use of Viacom's TMNT and NICKELODEON Registered and Common Law Trademarks, or by having both the right and ability to control such wrongful activity and a direct financial interest in such activity, Defendants are engaging in activity that dilutes and is likely to dilute by blurring the distinctive quality of Viacom's TMNT and NICKELODEON Registered and Common Law Trademarks in violation of 15 U.S.C. § 1125(c), in a way that has caused and is likely to cause damage to Viacom and its TMNT and NICKELODEON Registered and Common Law Trademarks.

80.     Defendants' actions have caused, and will continue to cause, irreparable harm to Viacom unless permanently enjoined.

## FOURTH CLAIM FOR RELIEF

### Common Law Trademark Infringement

81.     Viacom repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

82.     By selling, advertising, marketing and promoting products bearing the TMNT Registered and Common Law Trademarks, ATLA Registered and Common Law Trademarks, ARM Registered and Common Law Trademarks, and NICKELODEON Registered and Common Law Trademarks, or confusingly similar variations thereof; or by knowingly and materially contributing to such wrongful use of Viacom's TMNT Registered and Common Law Trademarks, ATLA Registered and Common Law Trademarks, ARM Registered and Common Law Trademarks, and NICKELODEON Registered and Common Law Trademarks; or by having both the right and ability to control such wrongful activity and a direct financial interest in such activity, Defendants are engaged in willful acts of trademark infringement in violation of common law of the State of New York that have caused and are likely to cause damage to Viacom and its TMNT Registered and Common Law Trademarks, ATLA Registered and Common Law Trademarks, ARM Registered and Common Law Trademarks, and NICKELODEON Registered and Common Law Trademarks.

83.     Defendants' actions have caused, and will continue to cause, irreparable harm to Viacom unless permanently enjoined.

## FIFTH CLAIM FOR RELIEF

### Common Law Unfair Competition

84.     Viacom repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

85.     By selling, advertising, marketing and promoting products bearing the TMNT Registered and Common Law Trademarks, ATLA Registered and Common Law Trademarks, ARM Registered and Common Law Trademarks, and NICKELODEON Registered and Common Law Trademarks, or confusingly similar variations thereof; or by knowingly and materially contributing to such wrongful use of Viacom's TMNT Registered and Common Law Trademarks, ATLA Registered and Common Law Trademarks, ARM Registered and Common Law Trademarks, and NICKELODEON Registered and Common Law Trademarks; or by having both the right and ability to control such wrongful activity and a direct financial interest in such activity, Defendants are engaged in willful, bad faith acts of unfair competition in violation of common law that have caused and are likely to cause damage to Viacom and its TMNT Registered and Common Law Trademarks, ATLA Registered and Common Law Trademarks, ARM Registered and Common Law Trademarks, and NICKELODEON Registered and Common Law Trademarks.

86.     Defendants' actions have caused, and will continue to cause, irreparable harm to Viacom unless permanently enjoined.

**SIXTH CLAIM FOR RELIEF**

**Dilution Under New York General Business Law § 360-l**

87.     Viacom repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

88.     By selling, advertising, marketing and promoting products bearing the TMNT Registered and Common Law Trademarks, ATLA Registered and Common Law Trademarks, ARM Registered and Common Law Trademarks, and NICKELODEON Registered and Common Law Trademarks or substantially similar variations thereof; or by knowingly and materially contributing to such wrongful use of Viacom's TMNT Registered and Common Law

Trademarks, ATLA Registered and Common Law Trademarks, ARM Registered and Common Law Trademarks, and NICKELODEON Registered and Common Law Trademarks; or by having both the right and ability to control such wrongful activity and a direct financial interest in such activity, Defendants are engaged in willful activity that dilutes and is likely to dilute by blurring the distinctive quality of Viacom's and its TMNT Registered and Common Law Trademarks, ATLA Registered and Common Law Trademarks, ARM Registered and Common Law Trademarks, and NICKELODEON Registered and Common Law Trademarks in violation of New York General Business Law § 360-1.

89.     Defendants' actions have caused, and will continue to cause, irreparable harm to Viacom unless permanently enjoined.

## SEVENTH CLAIM FOR RELIEF

### Copyright Infringement Under the U.S. Copyright Act

90.     Viacom repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

91.     Viacom is, and at all relevant times has been, the owner of the exclusive rights under the United States Copyright Act in the TMNT, ATLA and ARM Copyrighted Works that are the subjects of the TMNT, ATLA and ARM Registered Copyrights issued to Viacom.

92.     Among the exclusive rights granted to Viacom under the Copyright Act is the exclusive right to use or to license the right to use the TMNT, ATLA and ARM Copyrighted Works to others.

93.     Without Viacom's authorization, Defendants have created or had others create goods, packaging and other materials whose designs are substantially similar to those of the TMNT, ATLA and ARM Copyrighted Works, and Defendants have sold such goods in U.S. commerce.

94.     The foregoing acts of infringement have been willful and intentional, with wanton disregard and indifference to the rights of Viacom.

95.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Viacom irreparable injury that cannot be fully compensated or measured through an award of monetary damages.

WHEREFORE, Viacom prays for a judgment:

1.     Permanently enjoining and restraining Defendants, their officers, agents, servants, employees, attorneys, successors or assigns, and all persons or entities acting in concert or participation with them or any of them, from the production, distribution, offering for sale, sale, marketing, advertising and/or promotion in the United States of any goods that:

(i) use or depict in any way the TMNT Registered and Common Law Trademarks, ATLA Registered and Common Law Trademarks, ARM Registered and Common Law Trademarks, and NICKELODEON Registered and Common Law Trademarks, or any colorable imitations thereof, or any other designation that is confusingly similar to the TMNT Registered and Common Law Trademarks, ATLA Registered and Common Law Trademarks, ARM Registered and Common Law Trademarks, and NICKELODEON Registered and Common Law Trademarks;

(ii) any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' business and products are in any way associated or affiliated with or related to the TMNT Registered and Common Law Trademarks, ATLA Registered and Common Law Trademarks, ARM Registered and Common Law Trademarks, and NICKELODEON Registered and Common Law

Trademarks, or with Viacom or its TMNT, ATLA and ARM properties, and

NICKELODEON cable television channel;

(iii) use or depict in any way the TMNT Registered and Common Law Trademarks,

ATLA Registered and Common Law Trademarks, ARM Registered and Common Law

Trademarks, and NICKELODEON Registered and Common Law Trademarks, or any

colorable imitations thereof, or any other designation that dilutes or is likely to dilute by

blurring the TMNT Registered and Common Law Trademarks, ATLA Registered and

Common Law Trademarks, ARM Registered and Common Law Trademarks, and

NICKELODEON Registered and Common Law Trademarks; and

(iv) infringe the TMNT, ATLA and ARM Registered Copyrights and the TMNT, ATLA

and ARM Copyrighted Works protected by such Registered Copyrights.

2.      Directing Defendants to deliver up to Viacom for destruction or other

disposition, within thirty (30) days of the entry of final judgment herein, any and all goods or

marketing, advertising or promotional materials for such goods, in Defendants' possession or

within their custody or control that bear any designation in violation of Viacom's copyrights or

trademark rights as decreed herein.

3.      Directing Defendants to file with the Court and serve on counsel for

Viacom, within thirty days after entry of any injunction issued by the Court in this action, a

sworn written statement as provided in 15 U.S.C. § 1116.

4.      Directing Defendants to account to Viacom for their profits arising from

the conduct complained of herein, pursuant to 15 U.S.C. § 1117(a) and under 17 U.S.C. § 504.

51

5.      Awarding Viacom its actual damages incurred as a consequence of Defendants' wrongful conduct as described herein, pursuant to 15 U.S.C. § 1117(a) and under 17 U.S.C. § 504.

6.      As an alternative to actual damages under 17 U.S.C. § 504, awarding statutory damages under 17 U.S.C. § 504.

7.      Awarding Viacom prejudgment interest according to law.

8.      Awarding Viacom punitive damages on its fifth and seventh claims for relief.

9.      Awarding Viacom its reasonable attorneys' fees, taxable costs and disbursements of this action, pursuant to 15 U.S.C. § 1117 and 17 U.S.C. § 505.

10.     Awarding Viacom such other and further relief as the Court deems just and proper.

Dated: May 15, 2024             DORSEY & WHITNEY LLP

By  */s/ Bruce R. Ewing*
       Bruce R. Ewing
       51 West 52nd Street
       New York, New York 10019
       ewing.bruce@dorsey.com
       (212) 415-9200

*Attorneys for Plaintiff Viacom International Inc.*